**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LUXOTTICA GROUP S.P.A., OAKLEY, INC., and COSTA DEL MAR, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALMERCY, et al.,<br><br>Defendants. | Case No. 25-cv-09942<br><br>**Judge Robert W. Gettleman**<br><br>**Magistrate Judge Keri L. Holleb Hotaling** |

## MOTION TO COMPEL

Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc. (collectively, "Plaintiffs") move this Honorable Court to compel Defendants CoolCottonShirts (Def. No. 28), kingtee (Def. No. 40), and Lorikeet (Def. No. 43) (collectively, "Defendants") to respond fully to Plaintiffs' First Set of Interrogatories and Requests for the Production of Documents and Things ("RFP"), and to produce documents responsive to Plaintiffs' First Set of RFPs.

Defendants' refusal to comply with their discovery obligations has necessitated the filing of this Motion. Plaintiffs seek discovery that is straightforward, relevant, and easily accessible to Defendants. Instead of engaging in discovery, Defendants have refused to provide responsive documents, and provided written responses meant to impede discovery. As such, Defendants should be compelled to provide full and complete discovery responses and produce the outstanding responsive documents.

<u>**BACKGROUND AND LOCAL RULE 37.2 CERTIFICATION**</u>

**I. The Parties**

**A. Plaintiffs and the COSTA Trademarks**

Plaintiffs are engaged in the business of producing, manufacturing and distributing premium, luxury and sports apparel, including T-shirts, under well-known, federally registered trademarks, including COSTA, COSTA, and trademarks (collectively, the "COSTA Trademarks"). *See* [1] ¶¶ 8-11; [1-1]. *See also* Figure 1.

| Genuine COSTA branded T-Shirt | COSTA Trademarks |
|---|---|
|  | COSTA<br>COSTA<br> |

*Figure 1*

**B. Defendants and their Counterfeit Products**

Defendants are a group of interrelated and/or co-owned e-commerce stores operating on Temu.com. Defendants have admitted to operating at least three Temu stores that offered for sale and sold products using counterfeits of the COSTA Trademarks ("Counterfeit Products") to residents in Illinois. *See* Figure 2; Ex. 1, Declaration of Berel Y. Lakovitsky ("Lakovitsky Decl.").

<table>
<tr><th>CoolCottonShirts</th><th>kingtee</th><th>Lorikeet</th></tr>
<tr>
<td>
</td>
<td>
</td>
<td>
</td>
</tr>
</table>

*Figure 2*

As alleged in Plaintiffs' Complaint, "[t]actics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their counterfeit network." [1] ¶ 16. These tactics include, "regularly register[ing] or acquir[ing] new seller aliases for the purpose of offering for sale and selling Counterfeit Products." *Id.* ¶ 23. Defendants also "operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiffs' enforcement[, and] maintain off-shore bank accounts and regularly move funds ... to avoid payment of any monetary judgment[.]" *Id.* ¶ 26.

## II. Procedural History

Plaintiffs were authorized to conduct expedited discovery related to Defendants' identities and nature of their sales operations. *See* [22] ¶ 6; [32] ¶ 6. Plaintiffs served Defendants with expedited discovery on August 29, 2025, making Defendants' response deadline September 3, 2025. Lakovitsky Decl. ¶ 3; *See* [32] ¶ 6. Defendants did not respond to Plaintiffs' discovery requests. Lakovitsky Decl. ¶ 4. Instead, they filed a Motion to Dismiss asserting lack of personal

jurisdiction. [39]. Plaintiffs moved for jurisdictional discovery [42], which was granted [44].

Plaintiffs served Defendants with Plaintiffs' First Set of Interrogatories and First Set of RFP (collectively, "First Set of Discovery Requests"[1]) on November 3, 2025. Lakovitsky Decl. ¶ 5. Defendants were ordered to respond by November 28, 2025. *See* [54]. Defendants failed to respond by November 28, 2025. *See* [56]. Defendants subsequently produced untimely and deficient responses to Plaintiffs' First Set of Discovery Requests without producing any responsive documents. *See* Exs. 4-5, Lakovitsky Decl.

The parties held a Local Rule 37.2 conference on December 19, 2025, where Defendants agreed to supplement their responses and production by December 22, 2025. *See* [58]. On December 22, 2025, Defendants stated that "[w]ith respect to [Plaintiffs' First Set of Discovery Requests], Defendants maintain that their prior responses are sufficient." Ex. 6, Lakovitsky Decl. Defendants sent a link to a folder purporting to contain responsive documents, but did not grant Plaintiffs access to open the link. *See id.* ¶ 11. On December 23, 2025, after the parties conferred,[2] Defendants requested that Plaintiffs delay filing a motion to compel because Defendants were considering withdrawing their Motion to Dismiss [35]. Defendants moved to withdraw the Motion to Dismiss on January 5, 2026. [61]. The Motion to Dismiss was withdrawn on January 9, 2026, and Defendants filed their Answer on January 23, 2026. *See* [62]; [65].

The parties held a Local Rule 37.2 conference on January 30, 2026. Defendants agreed that they would supplement their responses and production to Plaintiffs' First Set of Discovery Requests by February 4, 2026. *See* [67]. Defendants did not provide supplemental responses to

---

[1] After Defendants withdrew their Motion to Dismiss, the parties proceeded with fact discovery and treated Plaintiffs' First Set of Discovery Requests as the operative first set of discovery requests. *See* [63].

[2] During the call, Plaintiffs informed Defendants of evidence showing certain portions of the Motion to Dismiss were frivolous, that the Motion to Dismiss does not comply with this District's Local Rules, and that certain portions of the Motion to Dismiss are either moot, or unlikely to succeed.

Plaintiffs' First Set of Discovery Requests on February 4, 2026. Lakovitsky Decl. ¶ 12. Defendants did provide Plaintiffs with the previously inaccessible documents. *Id.* The production consisted of only two documents: (1) order information associated with the Plaintiffs' investigative orders, and (2) two pages of irrelevant payroll records. *See* Ex. 7, *Id.*

On February 6, 2026, Defendants again assured Plaintiffs that they "will provide a supplemental response by next Friday" (i.e., February 13, 2026). *See* Ex. 8, *id.* Defendants did not provide supplemental responses by February 13, 2026. *Id.* ¶ 15. The Parties held an additional Local Rule 37.2 Conference on March 24, 2026. *Id.* ¶ 16. Plaintiffs certify that they have in good faith attempted to confer with the Defendants in an effort to obtain supplemental discovery responses and responsive documents without court action.

## ARGUMENT

### I. Legal Standards

Parties are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" and "is not limited to issues raised by the pleadings." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In other words, "[r]equests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Courts look unfavorably to restrictions placed on discovery. *See id.*

Rule 37 provides that a party may seek to compel discovery where a responding party refuses to provide requested documents or information, or where the party's response is evasive or incomplete. Fed. R. Civ. P. 37. "In ruling on motions to compel discovery, 'courts have

consistently adopted a liberal interpretation of the discovery rules.'" *Kodish*, 235 F.R.D. at 450.

"The burden rests upon the objecting party to show why a particular discovery request is improper." *Shapo v. Engle*, 2001 U.S. Dist. LEXIS 26640, at *12 (N.D. Ill. May 24, 2001). "That burden cannot be met by a reflexive invocation of 'the same baseless, often abused litany' that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome' or that it is 'neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 57892, at *20 (N.D. Ill. Aug. 2, 2006).

## II. Defendants' Objections Should Be Disregarded and Deemed Waived

When objecting to an RFP, the responding party must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Likewise, objections to interrogatories "must show 'with specificity' that the request is inappropriate." *Deere v. Am. Water Works Co.*, 306 F.R.D. 208, 215 (S.D. Ind. 2015); *see also Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 387 (N.D. Ill. 1990). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish.*, 235 F.R.D. at 449-50.

"[W]hen the objecting party raises nonspecific, boilerplate objections without clearly explaining how the request is objectionable, courts should overrule the objections in favor of broad discovery, pursuant to the federal rules." *Midkiff v. Navient Sols., Inc.*, 2021 U.S. Dist. LEXIS 161654, at *4 (S.D. Ind. Aug. 26, 2021). Each of Defendants' answers included "the usual, tiresome, unadorned boilerplate objections that attorneys insist on making but courts consistently decry." *Flores v. Guevara*, 2024 U.S. Dist. LEXIS 166268, at *4 (N.D. Ill. Sep. 16, 2024). *See* Exs. 4-5, Lakovitsky Decl. "[C]ourt after court has rejected these unadorned boilerplate 'objections' as tantamount to no objections at all." *Extended Care Clinical v. Scottsdale Ins.*, 2021 U.S. Dist. LEXIS 127741, at *6 (N.D. Ill. July 8, 2021) (collecting cases). Accordingly, Defendants' boilerplate objections to the First Set of Discovery Requests should be disregarded.

In addition, Defendants failed to provide timely objections and declined the opportunity to supplement their discovery responses and objections. *See* Ex. 6, Lakovitsky Decl. ("With respect to Plaintiffs' Requests for Interrogatories and Requests for Production, Defendants maintain that their prior responses are sufficient."). As such, Defendants also waived any objections to Plaintiffs' First Set of Discovery Requests. *Nat'l Van Lines v. First Nat'l Van Lines, Inc.*, 2023 U.S. Dist. LEXIS 89751, at *3-5 (N.D. Ill. May 23, 2023); *see also Stagger v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 220019, at *11 (N.D. Ill. Nov. 15, 2021).

## III. Defendants Should Be Compelled to Provide Signed and Verified Responses and Identify the Individual(s) Responding to the Interrogatories

"Under Rule 33, answers to interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney." *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010); Fed. R. Civ. P. 33(b)(3), (5). Similarly, "[w]hen a party responds to a document request with an answer as opposed to production or an objection, the party must answer under oath." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012).

Defendants' responses to Plaintiffs' Interrogatories were neither signed nor verified by the person answering them, in "violation of the clear mandate of Federal Rule of Civil Procedure 33[.]" *Hindmon v. Nat'l-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 619 (7th Cir. 1982). *See* Ex. 5, Lakovitsky Decl. As such, Defendants should be compelled to provide signed and verified responses to Plaintiffs' Interrogatories.

Additionally, Interrogatory No. 14 requested Defendants to identify who is answering or providing answers to the Interrogatories. *See* Ex. 2, Lakovitsky Decl. *See Fudali v. Napolitano*, 283 F.R.D. 400, 402 (N.D. Ill. 2012) ("To add insult to injury, not only are the interrogatories unsigned, but [Defendants have] refused to provide the names of the individuals involved in providing the information contained in them."). Plaintiffs are entitled to "inquire into the identity

and location of persons having knowledge of relevant facts, " *Bd. of Educ. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984), and "not obligated to rely on [Defendants'] representations regarding who [they] believes to be pertinent witnesses or individuals with relevant information." *India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 193 (E.D. Wis. 2006). Thus, Defendants should also be ordered to supplement their response to Interrogatory No. 14.

## IV. Defendants Should Be Compelled to Provide Full and Complete Answers to Plaintiffs' Interrogatories

When responding to an interrogatory, the answer "should be complete in and of itself and stand on its own." *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2020 U.S. Dist. LEXIS 61634, at *16 (N.D. Ill. Apr. 8, 2020). "That means the response should not refer to 'pleadings, depositions, other documents, or other interrogatories, especially when such references make it impracticable to determine whether an adequate answer has been given without [a] cross-checking comparison of answers.'" *Alight Sols. v. Thomson*, 2021 U.S. Dist. LEXIS 208685, at *9 (N.D. Ill. Oct. 29, 2021). Additionally, "[t]he answering party cannot limit answers to matters within his or her own knowledge and ignore information available to the individual answering the interrogatory or to persons or sources under that individual's control." *David Mizer Enters. v. Nexstar Broad., Inc.*, 2016 U.S. Dist. LEXIS 117076, at *7 (C.D. Ill. Aug. 31, 2016).

As further explained below, Defendants' responses to the Interrogatories "do not comport with the duty of cooperation and disclosure imposed by the discovery provisions of the federal rules." *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976). Instead, they are "evasive and incomplete and appear to have been framed to impede discovery rather than to facilitate it." *Id.*

### A. Interrogatories Regarding Defendants' Sales, Financials, and Consumer Information

Interrogatories Nos. 2, 3, 4, and 11 are directed towards identifying Defendants' stores, determining Defendants' sales and profits, assessing the size and scope of Defendants' operations, and identifying Defendants' financial accounts. *See* Ex. 2, Lakovitsky Decl.

Interrogatory No. 2 requested Defendants identify all the e-commerce stores through which they advertise and/or offer for sale products to the U.S. *See* Ex. 2, Lakovitsky Decl. Defendants responded "[t]he store operates exclusively on the TEMU platform. TEMU conducts all advertising." *See* Ex. 4, Lakovitsky Decl. This answer is nonresponsive, because Interrogatory No. 2 requested Defendants to identify what stores they operate, not what platforms the known stores operate on. Moreover, since Defendants' interrelated stores sell largely identical products, identification of all stores is relevant for liability, damages, and injunctive relief. Additionally, the completeness of other answers also turns on the completeness of Interrogatory No. 2.

The Court authorized discovery related to Defendants' financial accounts and payment methods. [32] ¶ 6. Interrogatory No. 11 required Defendants to explain the status of funds paid for the Counterfeit Product, including identifying what bank accounts the funds were transferred to. Ex. 2, Lakovitsky Decl. In response, Defendants stated "All payments were handled solely by TEMU." Ex. 4, *id.* This answer is also evasive and nonresponsive.

Interrogatory No. 3 requested identification of the products Defendants sold, an accounting of those sales, and certain other details. Ex. 2, *id.* Interrogatory No. 4 asked Defendants to describe Defendants' search parameters and procedure for identifying the products in response to Interrogatory No. 3. *Id.* Defendants refused to respond to Interrogatory No. 4, and in their answer to Interrogatory No. 3, claimed that "[p]roduct information has already been provided through platform records. Customer names and addresses are confidential and cannot be disclosed, other

than the accused product." Ex. 4, *id.* This answer is not responsive, and is inaccurate since Temu did not provide the information requested in Interrogatory No. 3.

Regardless, "'[y]ou already know the answer' ... is not a proper objection or answer" to an interrogatory. *Veroblue Farms United States, Inc. v. Wulf*, 345 F.R.D. 406, 438 (N.D. Tex. 2021); *see also Ropak Corp. v. Plastican, Inc*., 2006 U.S. Dist. LEXIS 19912, at *13 (N.D. Ill. Apr. 17, 2006) ("It is well established that an answer to an interrogatory must be responsive to the question."). Further, Defendants do not provide any evidence of this purported "privacy policy," nor would Defendants' agreements with Temu provide a basis to withhold this information. *See Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 U.S. Dist. LEXIS 127723, at *87-88 (N.D. Ill. Aug. 29, 2013). "Many cases involving claims of trademark infringement require the production of customer and supplier lists and such lists are customarily produced[.]" *Maui Jim, Inc. v. Smartbuy Guru Enters.*, 2017 U.S. Dist. LEXIS 194411, at *14-15 (N.D. Ill. Nov. 27, 2017).

In addition to being relevant for liability, the requested sales and financial information is relevant for damages. In cases of trademark counterfeiting, a plaintiff is entitled to an award of profits as a remedy under 15 U.S.C. § 1117(a), or can elect statutory damages under 15 U.S.C. § 1117(c). Accordingly, sales and financial information is relevant for establishing profits, and any offsets Defendants will try to claim. *See Nat'l Van Lines*, 2023 U.S. Dist. LEXIS 89751, at *6; *see also Maui Jim, Inc. v. Smartbuy Guru Enters.*, 2018 U.S. Dist. LEXIS 24684, at *3-4 (N.D. Ill. Feb. 14, 2018). Rule 33 requires Defendants to respond, and "Plaintiff[s] should not be forced to rely on what Defendants selectively identify as relevant financial information." *Koninklijke Philips Elecs. N.V. v. KXD Tech.*, 2007 U.S. Dist. LEXIS 13956, at *23 (D. Nev. Feb. 21, 2007).

Moreover, "financials both, related and unrelated to the allegedly infringing sales" bear on the "size and scope of a [Defendants'] operations," which courts use to determine a baseline for statutory damages. *Luxottica Grp. S.p.A. v. Yiwu Cujia Trade Co., Ltd.*, 2023 U.S. Dist. LEXIS 179848, at *7 (N.D. Ill. Oct. 5, 2023). The requested consumer information is also necessary to identify whether there are consumers who were actually confused by Defendants' Counterfeit Product, which is relevant to trademark infringement claims. *See Easy Life, LLC v. Godaddy Operating Co., LLC*, 2015 U.S. Dist. LEXIS 103489, at *6-8 (C.D. Ill. Aug. 7, 2015).

In sum, Defendants' answers to Interrogatories Nos. 2, 3, 4, and 11 are evasive and incomplete. Defendants should be compelled to answer them in full.

**B. Interrogatory Regarding Defendants' Counterfeit Product Listing**

Interrogatory No. 9 requested Defendants to "[d]escribe in detail all facts and circumstances regarding the creation of the listing for the [Counterfeit Product] ... including the date the listing was created and all persons involved with creating the listing." Ex. 2, Lakovitsky Decl. In response, Defendants stated that "[t]he listing was created shortly before it appeared on the TEMU platform and was removed on May 12." Ex. 4, *id.* This response is incomplete. For example, Defendants' response did not include when the listing was created, or who was involved with creating the listing. Defendants' response also fails to explain why they decided to offer the Counterfeit Product for sale on their stores, why they used the images, title, and description they used in the listing, and what steps they took to determine whether they were authorized to sell.

Here, each of Defendants' stores used images of T-shirts bearing counterfeits of the COSTA Trademarks. *See* Figure 2, *supra* at 3. In addition, CoolCottonShirts' Counterfeit Product listing title read: "100% Cotton Crew - Neck T - Shirt, Casual and Trendy Style, ***<u>Features Brand</u>*** – Pattern, Creative and Stylish" (emphasis added); kingtee's Counterfeit Product listing title read:

"Regular Fit Short Sleeve with ***Costa*** Sunset Wave Graphic" (emphasis added); and Lorikeet's Counterfeit Product listing title read: "***Costa*** Inspired Logo Tee" (emphasis added). *See* Ex. 1, Lakovitsky Decl.

Discovery concerning why Defendants chose these images and product titles is relevant to assessing their intent and willfulness. These factors, in turn, are relevant for evaluating likelihood of confusion and calculating damages. *See Republic Techs., NA. LLC v. BBK Tobacco & Foods, LLP*, 135 F.4th 572, 584 (7th Cir. 2025) ("the defendant's intent to 'palm off' its product as that of another" is a factor for likelihood of confusion); *Oakley, Inc. v. Light in the Box, Ltd.*, 2025 U.S. Dist. LEXIS 160651, at *15 (N.D. Ill. Aug. 19, 2025) ("A finding of willfulness matters to an ultimate award of damages."). Additionally, Plaintiffs have the right to obtain detailed information regarding the Counterfeit Product listing because "[t]he purpose of discovery is to refine the case and to prepare it for trial based on a full understanding of the relevant facts." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015). As such, Defendants should be compelled to provide full and complete responses to Interrogatory No. 9.

## V. Defendants Should Be Compelled to Produce Responsive Documents and Supplement Their RFP Responses

Plaintiffs' First Set of RFPs included requests relating to Defendants' identity (RFP No. 13), infringement (RFP Nos. 3, 4, 6, 11, 14); sales and other financial information (RFP Nos. 1-2, 7, and 9), and marketing (RFP Nos. 8, 10). *See* Ex. 3, Lakovitsky Decl. Responsive documents that typically exist and correspond to these categories include: personal identifications, business registration certificates, consumer and supplier invoices, purchase orders, payroll records, bank records and other financial statements, tax records, platform sales records, product listing images and descriptions, physical product images, sample images, consumer and third party communications, agreements with third parties, and supplier and consumer lists.

As explained above, documents related to sales and financials are relevant for the reasons further above. *Supra* at 10-11. Documents related to Defendants' identities "are plainly relevant to the claims at issue here." *Luxottica Grp. S.p.A.*, 2023 U.S. Dist. LEXIS 179848, at *6. Documents related to Defendants' advertising and marketing are relevant to evaluating likelihood of confusion. The way Defendants use the marks and consumers' perception of that use are relevant factors to determine whether there is a likelihood of confusion. *See Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1216 (7th Cir. 1997) (confusion is evaluated "with reference to the realities of consumer behavior in the relevant market."); *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997) (marks compared "'in light of what happens in the marketplace,' not merely by looking at the two marks side-by-side.").

Even though the requested documents are typically retained in the ordinary course of business, Defendants produced only two documents, which were not "organize[d] and label[ed] ... to correspond to the categories in the request[s]" Fed. R. Civ. P. 34(b)(2)(E)(i). *See* Ex. 7, Lakovitsky Decl. *See Worthams v. GEICO Choice Ins. Co.*, 2026 U.S. Dist. LEXIS 71114, at *3 (D. Nev. Apr. 1, 2026) ("[A]n earmark of a recipient's inadequate inquiry is the obvious absence of documents and other written materials that the recipient reasonably would be expected to have retained in the ordinary course of its business.").

In addition, many of Defendants' RFP responses stated that Defendants "will produce any non-privileged documents within their possession, custody, or control[.]" *See* Ex. 5, Lakovitsky Decl. However, Defendants' RFP responses did not indicate which documents were withheld, and on what basis. Fed. R. Civ. P. 34(b)(2)(C); *See* Ex. 5, Lakovitsky Decl. Defendants also did not specify when the documents would be produced per Rule 34(b)(2)(B), which is not an "acceptable option." *Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009).

Further, Defendants claimed that documents related to their sales, Counterfeit Products, and online stores are unavailable. *See* Ex. 5, Lakovitsky Decl. However, "merely saying something is so does not make it so." *Nat'l Van Lines*, 2023 U.S. Dist. LEXIS 89751, at *5. Defendants' RFP responses do not provide a basis to determine whether Defendants searched for responsive documents. *See Rogers*, 288 F.R.D. at 485 ("A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the 'party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'").

Regardless, these claims are not plausible. Defendants' Temu stores are still active, and Temu sellers have access to their sales records and product information, even after Temu takes the listing down. Defendants also create, manage, and fulfill their own product listings, not Temu. Moreover, if Defendants' representations were genuine, they would not have been able to produce the records associated with Plaintiffs' orders. In addition, Defendants indicated that they make their own products to order. *See* Ex. 2, Lakovitsky Decl. (Response to Interrogatory No. 10). The fact that Temu concurrently possesses some documents is irrelevant. Finally, if Defendants claim documents do not exist, they should provide "a sworn certification confirming that no additional documents responsive to each of these requests are within their possession, custody, or control." *Luxottica Grp. S.p.A.*, 2023 U.S. Dist. LEXIS 179848, at *5.

In sum, Defendants' production is deficient. Defendants' RFP responses are improper, and their claim that the responsive documents are unavailable is not plausible. Therefore, Defendants should be compelled to provide proper RFP responses and produce documents responsive to RFP Nos. 1-4, 6-10, and 11-14.

## VI. The Court Should Award Plaintiffs Attorneys' Fees and Costs

Rule 37(a)(5)(A) provides that "[i]f the motion [to compel] is granted …the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Fee shifting under this rule is automatic, and "presumptively requires every loser to make good the victor's costs." *Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994). Defendants' failure to comply with reasonable discovery requests was not justified. As such, Defendants should be ordered to pay Plaintiffs' attorneys' fees incurred in connection with this Motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be granted. Accordingly, Plaintiffs respectfully request the Court grant Plaintiffs' Motion to Compel, and enter an Order (1) finding that Defendants' objections to Plaintiffs' First Set of Discovery Requests are waived, (2) awarding Plaintiffs attorneys' fees and costs under Rule 37(a)(5)(A), and (3) ordering Defendants:

a. to provide complete and non-evasive answers to Interrogatory Nos. 2, 3, 4, 9, 11, and 14, signed under oath by the answering individual(s), within fourteen days of the Court's Order;

b. to produce all documents in Defendants' control that are responsive to RFP Nos. 1-4, 6-10, and 11-14, organized and labeled to correspond to each request, within fourteen days of the Court's Order; and

c. to provide a sworn certification for each RFP in Plaintiffs' First Set of RFPs within fourteen days of the Court's Order that describes, in detail, the search efforts undertaken to locate responsive documents.

Dated this 20th day of April 2026.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Berel Y. Lakovitsky
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
blakovitsky@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of April 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio

Amy C. Ziegler
Justin R. Gaudio
Berel Y. Lakovitsky
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
blakovitsky@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc.*